**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT FORT CAMPBELL**
**CRIMINAL ACTION NO. 5:15-MJ-00010-LLK**

UNITED STATES OF AMERICA                                             PLAINTIFF

v.

ASHLEY MILLER                                                        DEFENDANT

### MEMORANDUM OPINION ACQUITTING DEFENDANT OF CHARGED OFFENSE

This matter is before the Court upon the parties' post-trial briefs following bench trial on May 6, 2015. Docket Numbers 7 and 8. Defendant was charged with shoplifting a pair of sunglasses and a pair of earrings having a value of $107.00 in violation of 18 U.S.C. § 641 ("theft of government property"). The alleged offense occurred in the Army Post Exchange (PX) at Fort Campbell, Kentucky, on October 16, 2014.

18 U.S.C. § 641 makes it a crime to "steal[], purloin[], or knowingly convert[] to [one's own] use ... any ... thing of value of the United States."[1]  Section 641 is the federal-law codification of common-law larceny, which is essentially theft or stealing, and is "among the earliest offenses known to the law that existed before legislation." *Morissette v. United States*, 342 U.S. 246, 260 (1952).

---

[1] The full text of 18 U.S.C. § 641 reads as follows:

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted--

Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

For the reasons below, the Court finds Defendant NOT GUILTY due to reasonable doubt as to whether her actions in the PX, which otherwise would have constituted a violation of 18 U.S.C. § 641, were accompanied by the required criminal intent.

### Effect of Prescription Medication

Defendant is married to a soldier stationed at Fort Campbell.  She has two children, ages 3 and 7.  She suffers severe degenerative disc disease of the cervical spine.  An accident in early 2014 resulted in a bulging or pinching of the cervical disc space into the spinal cord at the C4 and C5 levels. Defendant's Testimony, Audio Recording 49:00.

Defendant is in excruciating pain, spends a great deal of time in bed, and requires a neck brace if in an upright posture for extended periods.

From early 2014, until the incident on October 16, 2014, Defendant's physicians were aggressively attempting to treat her chronic pain.  Prescribed medications changed on a frequent basis.

On October 16, 2014, Defendant had prescriptions for:  50 microgram Fentanyl patch[2], 7.5 milligram Percocet[3], Zonisamide[4], Restoril[5], and Adderall[6], but she was not taking her Adderall.

Defendant testified that this potent cocktail of medication was affecting her in profound ways: She felt "heavy" and "stupid" most of the time.  57:00.  She had difficulty following even simple conversation and often had no recollection of her actions.  She was doing absent-minded things on a regular basis such as misplacing objects, forgetting about food cooking on the stove, putting cereal in the dog food bowl, and putting food in the dog's water bowl.

---

[2] According to Wikipedia, Fentanyl is a potent, synthetic opioid analgesic with rapid onset and short duration of action.  It is approximately 80 to 100 times more potent than morphine and roughly 15 to 20 times more potent than heroin.

[3] Percocet is the North American trade name of the combination oxycodone/acetaminophen.  Acetaminophen is well known as "Tylenol."  Oxycodone is a semisynthetic opioid synthesized from thebaine, an opioid alkaloid found in the persian poppy and one of the many opioid alkaloids found in the opium poppy.

[4] Zonisamide is a sulfonamide anticonvulsant used to treating epilepsy, Parkinson's disease, tardive dyskinesia, obesity, migraines, and bipolar depression.

[5] Restoril is a brand name of Temazepam is a hypnotic of the benzodiazepine class of psychoative drugs.

[6] Adderall is a psychostimulant drug of the phenethylamine class used in the treatment of attention deficit hyperactivity disorder (ADHD) and narcolepsy.

Defendant's husband testified that, on October 16, 2014, he discovered that she had placed the milk in the pantry instead of the refrigerator.  She was also making more significant mistakes such as forgetting to pick up the children at the bus stop and pay the bills on time.  According to Mr. Miller, the medication seemed to be "taking over [Defendant's] mind and body," she was becoming "someone I'm not familiar with."  1:22.

**Incident at the PX**

On October 16, 2014, Defendant entered the PX to do some shopping while waiting on some prescription medication being filled.  Surveillance camera and recording revealed that she spent some time observing a pair of sunglasses that did not have a price tag.  She put the sunglasses on her head and continued shopping.  She selected a pair of earrings, put them in her shopping cart, and continued shopping.  She selected some clothes, put them in the cart, parked the cart outside the dressing room, and entered the dressing room.

While she was in the dressing room, a store employee acting in coordination with surveillance verified that the earrings were no longer in the cart.  Within minutes after Defendant had departed the dressing room, an employee located, in the dressing room, a heart-shaped backing to which the missing earrings had been mounted.  The backing, which also contained the price tag, was discovered in a slot in the wall of the dressing room.  The slot allows customers to place pins removed from clothes prior to trying them on.  18:00.

Defendant testified that she took the earrings to the dressing room because it contained the only convenient mirror in the store, and she wanted to try on the earrings, see her reflection, and determine if the earrings were right for her.  1:04.  She removed the backing, allegedly not to steal the earrings, but simply because it was necessary to try them on.  After putting the loops through her ears and looking in the mirror, she remained undecided whether to purchase, slipped the earrings in an exterior compartment (pouch) of her purse, and continued shopping.  1:16.

3

She testified that, by the time she had completed her shopping and headed toward check-out, she had completely forgotten about the sunglasses and earrings.  1:07.

After paying for the items in her cart and exiting the store, she was confronted by Ms. Parker, who had been surveilling her.  Ms. Parker asked to see Defendant's ID.  Defendant told Ms. Parker that she did not steal anything and did not "have time for this."  This apparently is a reference to needing to pick up her prescription medication.

Defendant accompanied Ms. Parker to the security office.  Ms. Parker told Defendant, if she knew what this was about, to place the item on the desk.  Defendant eventually realized the sunglasses were not hers and stated that she did not recall how they came into her possession.  21:00.

Ms. Parker informed Defendant that she was not so much concerned with the sunglasses as another item.

Defendant began dumping her purse contents on the desk, but the earrings were not there.  A search of Defendant's person by a female MP failed to produce any earrings.  A search of Defendant's purse by a male MP located the earrings in the outer compartment.  42:00.

Defendant stated that she had forgotten about the earrings, covered her face with her hands, and soon experienced what she described as her first panic attack.  43:00.

She was very upset, crying, gesticulating, and vomiting.  A store employee called an ambulance. After approximately two hours at the hospital, she was release.

Defendant is charged with theft of government property in violation of 18 U.S.C. § 641.

### Legal Standards

A fundamental principle of American law is that no legitimate purpose is served by branding as a thief an individual, regardless of the wrongness of her actions, if she did not act with an evil-meaning mind:

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion.  It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.  A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory "But I didn't mean to," and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution.  ...  Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil.

*Morissette v. United States*, 342 U.S. 246, 250-52 (1952).[7]

    18 U.S.C. § 641 (larceny) contemplates a so-called specific-intent crime.  The required mental state (i.e., specific intent) is taking for one's own use with intent to permanently deprive the rightful owner of his/her/its property.  Id. at 270.  "Unwitting, inadvertent and unintended conversions" do not suffice.  Id. at 271.

**Findings and Conclusions**

    1.  There is reasonable doubt as to whether Defendant's acts were accompanied by a specific intent to permanently deprive the government of its property.

    2.  Defendant's husband presented credible testimony that, at the time of the incident in the PX, Defendant's prescription medication was affecting her short-term memory and causing her to act in an extremely absent-minded and erratic manner.[8]  On the day in question, he discovered that she had

---

[7] Morissette retrieved some spent bomb casings and sold them as scrap metal for $84.  He was charged with theft of government property in violation of 18 U.S.C. § 641.  The Supreme Court held that Morissette should not have been branded as a thief where there was no reason to disbelieve his assertions that, at the time of the taking, he truly believed the casings had been abandoned, cast off, unwanted, and considered of no value to the government.  The prosecution must prove that the defendant intended to steal and not merely that he intended to take something of value from the government.

[8] Defendant is not alleging that the prescription medication (intoxication) rendered her incapable of forming the specific intent required for the crime of larceny, i.e., she is not offering a diminished-capacity defense.

"It is well established that intoxication, whether voluntary or involuntary, may preclude the formation of specific-intent and thus serve to negate an essential element of certain [specific-intent] crimes."  United States v. Veach, 455 F.3d 628, 631 (6th Cir.2006).  "Thus, a defendant may show that she was too intoxicated to entertain the [specific] intent required for larceny."  Wharton's Criminal Law § 111.

placed the milk in the pantry instead of the refrigerator.  She was forgetting to pick up the children at the bus stop and pay the bills on time.  The medication seemed to be taking over her mind and body, and she was becoming a different person.

3.  Of all the evidence presented at trial, the most troubling is Defendant's disposing of the backing, which contained the price tag, in the pin slot receptacle in the dressing room.  One would expect a person of innocent mind (even one as addled as Defendant's) to have slipped the backing in her purse along with the earrings.  Nevertheless, in light of the credible testimony of erratic behavior, there is reasonable doubt as to whether Defendant's disposal of the backing in the pin slot was "unwitting, inadvertent and unintended" as contemplated by *Morissette*, supra.

4.  There is reasonable doubt as to whether Defendant's actions, which otherwise would have constituted a violation of 18 U.S.C. § 641, was accompanied by criminal intent.

The Court being sufficiently advised, Defendant is adjudicated NOT GUILTY of the charged violation of 18 U.S.C. § 641.

---

While it may have been problematic if Defendant had offered lay testimony in support of her diminished capacity, Defendant and her husband were entitled to testify as to their personal observations regarding the effects of medication on short-term memory.